**Wilbur KLEIN, Joseph Davella and Ivor Massey, Plaintiffs,**

v.

**A.G. BECKER PARIBAS INCORPORATED, Hoyt Ecker, Seaforth M. Lyle, Bruce Elmblad, Morton E. Goulder, David T. Riddiford and Robert L. Warren, Jr., Defendants.**

No. 83 Civ. 6456 (GLG).

United States District Court, S.D. New York.

March 19, 1986.

As Amended April 4, 1986.

Booth, Lipton & Lipton, New York City, for plaintiffs Klein and Massey; Philip H. Kalban, James C. Olson, of counsel.

Pomerantz Levy Haudek, Block & Grossman, New York City, for plaintiff Davella; Stephen P. Hoffman, Lawrence D. Paskowitz, New York City and Berman DeValerio & Pease, Boston, Mass., of counsel.

Brown, Wood, Ivey, Mitchell & Petty, New York City, for defendant A.G. Becker Paribas, Inc.; Henry F. Minnerop, Judith Welcom, of counsel.

Testa, Hurwitz & Thibeault, Boston, Mass., for defendants Hoyt Ecker, Bruce Elmblad, Morton E. Goulder, David T. Riddiford and Robert L. Warren, Jr.; Edmund Case, Dennis Hart, of counsel.

Orans, Elsen & Lupert, New York City, for defendant Seaforth M. Lyle; Sheldon Elsen, Lawrence Solan, of counsel.

## OPINION

GOETTEL, District Judge:

The plaintiffs seek to represent a putative class of shareholders who wish to recover for alleged securities fraud under sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77*l* (1982), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1982), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1985), promulgated thereunder. The plaintiffs now move for class certification pursuant to Fed.R.Civ.P. 23. The defendants challenge the adequacy of the named plaintiffs as class representatives, as well as the scope of the proposed class. As discussed below, we certify the uncontested portion of the proposed class. We also approve the class representatives and their counsel.

## I. BACKGROUND

The named plaintiffs, Wilbur Klein and Joseph Davella, purchased shares of Computer Devices, Inc. ("CDI") stock through a public offering held on or about July 8, 1983. At that time, CDI offered one million shares of common stock at $11.25 per share.[1] Plaintiff Ivor Massey purchased his shares from the underwriter of the CDI offering, defendant Becker-Paribas, Inc. ("Becker-Paribas").[2] Subsequent to their original purchases, Klein and Davella received copies of CDI's official prospectus, which described the reasons for CDI's offering, as well as the strengths and risks of the investment.[3]

CDI had issued the stock in order to finance its expansion into the computer market with its new DOT personal computer and its Series 2000 terminal/printer. Although the prospectus revealed the general risks of introducing a new product in the competitive computer market, it did not disclose the fact that the DOT's 3½-inch SONY disk drive component was incompatible with most software currently on the market, which utilized a 5¼-inch disk drive. Moreover, the prospectus did not indicate that CDI had sustained a second quarter loss of 3.7 million dollars.[4] Nor did it note that CDI was planning to reduce its manufacturing workforce by twenty percent. The plaintiffs argue that this omitted information, which was subsequently revealed by news reports on July 25, 26, and 28, 1983,[5] resulted in the over-valuation of CDI stock. After these reports were released the stock fell to $8.375 per share by August 1, 1983. On August 8, 1983, CDI announced the resignation of two of its vice-presidents.[6] On August 13, 1983, the Boston Globe reported that CDI was laying off additional employees; the Wall Street Journal carried a similar announcement on August 15, 1983. The stock closed that day at $5.375 per share.

The plaintiffs allege that the registration and prospectus filed by CDI with the SEC contained material omissions regarding the true state of CDI's financial stability and its future in the computer market. The plaintiffs contend that CDI's alleged failure to disclose certain information gives rise to causes of action under sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77l (1982) (hereinafter referred to as sections 11 and 12(2)). In addition, the plaintiffs claim that the alleged omissions in the prospectus, which artificially inflated the value of the stock during the period from July 8, 1983, through August 17, 1983, when the shares were traded on the open market, gives rise to the plaintiffs' claim under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1982), and Rule 10b–5, 17 C.F.R. § 240.10b–5 (1985) (hereinafter referred to collectively as Rule 10b–5).

1. This price was determined by the market price of previously issued shares of CDI stock, which closed at $11.25 on July 7, 1983.

2. In addition to Becker-Paribas, Inc., the named defendants are Hoyt Ecker, Seaforth M. Lyle, Bruce Elmblad, Morton E. Goulder, David T. Riddiford, and Robert L. Warren, Jr., all officials of CDI. In *Klein v. Computer Devices, Inc.,* 602 F.Supp. 837 (S.D.N.Y.1985), and *Klein v. Computer Devices, Inc.,* 591 F.Supp. 270 (S.D.N.Y.1984), we previously held that these parties were proper defendants. *See* sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77l (1982). On October 31, 1983, CDI filed in United States Bankruptcy Court for the District of Massachusetts under Chapter 11. On December 14, 1984, this Court granted an order dismissing the pending class action against CDI.

3. Prior to the July 8, 1983, offering, CDI circulated a "red herring" or unofficial prospectus concerning the newly issued one million shares. The official prospectus, which was filed with the SEC, was sent to investors at an unspecified time following the public offering.

4. The second quarter ended June 30, 1983.

5. CDI issued a press release, carried by the Dow Jones wire on July 25, 1983, and by the Boston Globe on July 26, 1983, that it anticipated a 3.7 million dollar loss in its second quarter. On July 28, 1983, the Dow Jones news wire and the Boston Globe both reported that CDI had laid off twenty percent of its workforce.

6. This announcement was reported by the Dow Jones news wire on August 9, 1983, and by the Boston Globe on August 10, 1983.

The defendants do not oppose certifying that class of persons who purchased CDI stock between July 8, 1983, and July 25, 1983. They do, however, challenge the typicality of plaintiff Davella's Rule 10b–5 claim, and the adequacy of his representation on all class claims. The defendants also seek to limit the uncontested class on the Rule 10b–5 claim to those shareholders who actually relied on the prospectus when purchasing their CDI shares. Accordingly, the defendants challenge the typicality of plaintiffs Klein and Massey's 10b–5 claims *vis-a-vis* those shareholders who did not directly rely on the prospectus. Finally, the defendants oppose any extension of the class on any of the claims to include persons who purchased CDI stock after July 25, 1983, the date of the first press release, which the defendants contend cured any alleged defect in the prospectus.

## II. DISCUSSION

Under Fed.R.Civ.P. 23(a), the plaintiffs must demonstrate that (1) the class is so numerous as to render joinder impracticable; (2) there exist questions of law and fact common to the class; and (3) the claims of the representative parties will fairly and adequately protect the interests of the class. In addition, this Court must find that the plaintiffs have met one of the elements of 23(b).[7]

7. Fed.R.Civ.P. 23 provides:
  (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.
  (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satified, and in addition:
  \*   \*   \*   \*   \*   \*
  ... (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class

### A. Numerosity.

The defendants do not contest the numerosity of the class which consists of hundreds or perhaps thousands of people who purchased and traded CDI stock from July 8, 1983, through July 25, 1983, and beyond. Joinder of such persons is clearly impracticable. *See Somerville v. Major Exploration, Inc.*, [1984] Fed.Sec.L.Rep. ¶ 91,473 at 98,369, 102 F.R.D. 500 (S.D.N.Y. 1984); *Brady v. Lac, Inc.*, 72 F.R.D. 22, 26–27 (S.D.N.Y.1976). We find that the plaintiffs have satisfied the numerosity requirements.[8]

### B. Common Questions of Law and Fact.

To prevail on their sections 11 or 12(2) claims, the plaintiffs must demonstrate that the registration statement, of which the official prospectus is part, "contained an untrue statement of material fact or omitted to state a material fact required to be stated therein." *See* section 11 and section 12(2), Securities Act of 1933. The question of whether CDI's prospectus omitted material information is common to all persons who purchased CDI stock from July 8, 1983, through July 25, 1983. We find that the plaintiffs have satisfied the requirements of 23(a)(2) on their sections 11 and 12(2) claims with respect to these persons.

action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

8. For the purposes of satisfying Rule 23(a)(1), we do not find it necessary to distinguish the Rule 10b–5 claim and the claims brought under sections 11 and 12(2). We find that 23(a)(1) has been satisfied as to each of these claims for the reasons discussed above.

The plaintiffs' Rule 10b–5 claim also rests on common questions of fact regarding the content of the official prospectus. The plaintiffs claim that the alleged material omissions in the prospectus rendered that document misleading in violation of Rule 10b–5.[9]

The defendants assert that issues of fact with respect to reliance required by Rule 10b–5 vary between members of the class who directly relied on the prospectus, and those who merely relied on the market when purchasing their CDI shares. The plaintiffs claim that the alleged omissions in the prospectus artificially inflated the price of the stock in "fraud on the market." Under this theory, the relevant issue is no longer whether individual investors relied on the allegedly fraudulent prospectus, but whether that prospectus deceived the market as a whole. *See* Note, *Fraud on the Market Theory: Efficient Markets and the Defenses to an Implied 10b–5 Action,* 70 Iowa L.Rev. 975, 984 (1984). Whether material omissions existed in the prospectus remains a fundamental question of fact common to both sets of investors who purchased their stock from July 8, 1983, through July 25, 1983.

C.  Typicality of Plaintiffs' Claims.

1.  Plaintiffs' sections 11 and 12(2) claims.

The materiality of the alleged omissions is central to the sections 11 and 12(2) claims for all class members. Since the defendants have not demonstrated otherwise, we find the named plaintiffs' claims to be typical of the class of persons who purchased CDI stock, traceable to the July 8, 1983, offering, from July 8, 1983, through July 25, 1983.

2.  Plaintiff's Rule 10b–5 claim.

■  The defendants contend that the plaintiffs are alleging reliance on the prospectus under their 10b–5 claim. The defendants do not challenge the typicality of plaintiffs Klein and Massey's claim, for both have demonstrated that they relied on the information in the prospectus when they purchased CDI common stock through the public offering on or about July 8, 1983. The defendants, however, maintain that plaintiff Davella's claim is not typical of the proposed class, because Davella admits relying on his broker's advice rather than on the actual prospectus when purchasing his stock through the public offering.

The defendants' argument, however, misconstrues the plaintiffs' Rule 10b–5 claim. The plaintiffs are not simply alleging that the prospectus misled the individual investors who directly relied on that document; they claim that the prospectus misled the market as a whole and thereby deceived those investors who merely relied upon the market. The plaintiffs are claiming that all investors who purchased CDI stock traceable to the July 8, 1983, offering are victims of a fraud on the market.

■  Under the fraud on the market theory, a plaintiff establishes a rebuttable presumption of reliance by alleging that (1) an affirmative misrepresentation affected the price of a security traded on the open market, (2) the plaintiff relied to his detriment on the integrity of the market price, and (3) the price of the security "reacted adversely" when the truth was revealed concerning the issuer of the security. *Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1982), *vacated as moot,* 459 U.S. 1027, 103 S.Ct.

---

**9.**  17 C.F.R. § 240.10b–5 provides:

Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

434, 74 L.Ed.2d 594 (1982). Having pleaded fraud on the market, the plaintiffs need not prove actual reliance on the deceptive prospectus. *Id. See Ross v. A.H. Robbins Co.*, 607 F.2d 545, 554 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). *See generally*, Note, *Fraud on the Market Theory*, 95 Harv.L. Rev. 1143, 1143–46 (1982).

Moreover, it matters not that Davella did not rely directly on the market, but on his broker.

> Reliance on third parties such as investment counselors ... is likely to be typical rather than atypical of the circumstances under which a substantial number of class members purchased their stock. Such reliance is not necessarily incompatible with a finding that the fraud was a "significant contributing cause" of their injuries.

*Kronfeld v. Trans World Airlines*, [1984–85] Fed.Sec.L.Rep. ¶ 91,871 at 90,323, 90,-325, 104 F.R.D. 50 (S.D.N.Y.1984). Although Davella relied on his broker's advice, this does not alter the allegation that the market played a substantial part in deceiving Davella as to the true value of the CDI stock issued on or about July 8, 1983. We find Davella's claim typical of the class.

### D. Adequacy of Plaintiff Davella's Representation on all Claims.

■ In assessing whether "the representative parties will fairly and adequately protect the interest of the class," Fed.R. Civ.P. 23(a)(4), the Court looks for two basic elements: (1) whether there is a potential conflict between the named plaintiffs and the absent class members, and (2) vigorous prosecution of the action by the representative party which entails that the party's attorney be qualified, experienced, and generally capable of conducting the litigation. *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 101 (S.D.N.Y. 1981); *Herbst v. Able*, 47 F.R.D. 11, 15 (S.D.N.Y.1969).

■ The defendants have not offered any evidence suggesting conflicting interests between the plaintiffs and the unnamed class members, at least as to those who purchased before the adverse news reports. (*See* discussion of the extended class, section E *infra*.) Nor do the defendants object to Klein and Massey as class representatives. The defendants' claim of inadequate representation under Rule 23(a)(4) rests solely on Davella's alleged inability to prosecute this claim.

The defendants assert that Davella is unfamiliar with either the facts or the course of the litigation, and, therefore, is an inadequate representative of the proposed class. Although a number of courts differ on this issue,[10] the recent trend in this district is to assess the adequacy of the representative's attorney rather than the personal qualification of the named plaintiff. *See Dura-Bilt Corp. v. Chase Manhattan Corp., supra*, 89 F.R.D. at 100. Indeed, it is unreasonable to expect an ordinary investor, such as Davella, to have the requisite sophistication and legal background to assist counsel in assessing liabilities under sections 11 and 12(2), or Rule

---

**10.** *See, e.g., Denvin v. International Harvester Co.*, [1984–65] Fed.Sec.L.Rep. (CCH) ¶ 92,064 at 91,312–313, 610 F.Supp. 255 (S.D.N.Y.1985). In *Denvin*, the court found that the plaintiff was not a suitable class representative, because the plaintiff had demonstrated a serious lack of familiarity with the suit. The plaintiff's memory regarding the complaint and his dealings with the defendant was poor. Furthermore, the plaintiff's deposition demonstrated that his personal knowledge of the facts pleaded in the complaint was either extremely limited or nonexistent. In *Greenspan v. Brassler*, 78 F.R.D. 130 (S.D.N.Y.1978), the court denied the motion for class certification pursuant to 23(a)(4), ruling that the plaintiffs' "alarming unfamiliarity

with the suit," and their "undue emphasis on their counsel's ability to conduct the litigation" rendered them unsuitable representatives. "Plaintiffs' limited personal knowledge of the facts underlying this suit, as well as their apparently superfluous role in this litigation to date, indicate their inadequacy as class representatives." *Id.* at 134. In *Weisman v. Darneille*, 78 F.R.D. 669 (S.D.N.Y.1978), the court denied class certification under 23(a)(4) since plaintiff was not familiar with the parties involved. "Plaintiff's evident willingness to rely on counsel's ability to protect the interests of the class is inconsistent with the participation required of an adequate class representative." *Id.* at 671.

10b–5. Davella's counsel has an outstanding reputation in the securities field, and is clearly capable of handling this litigation. *Cf. Kronfeld v. Trans World Airlines, supra,* [1984–85] Fed.Sec.L.Rep. ¶ 91,871, at 90,326, 104 F.R.D. 50.

The defendants further challenge the adequacy of Davella as a class representative by claiming that he lacks the financial resources to pay the cost of this litigation. This contention is equally without merit. Davella's financial resources are not an issue in this case as the plaintiffs have demonstrated their overall ability to assume the costs of the litigation. We find that Davella, along with Klein and Massey, is an adequate representative of the class on all of its claims.

**E.  Extending the Class to August 17, 1983.**

■ The defendants challenge the extension of the proposed class beyond July 25, 1983, on all the claims.

**1.  Extending the Class on the Sections 11 and 12(2) Claims.**

The defendants argue that the plaintiffs' claims under sections 11 and 12(2) are not typical of the extended class.

In order to prevail on a section 11 claim, a plaintiff must be able to prove that he purchased stock issued and sold pursuant to a deficient registration statement, and that he did not have knowledge of that deficiency. *Barnes v. Osofsky,* 254 F.Supp. 721, 725 (S.D.N.Y.1966), *aff'd,* 373 F.2d 269 (2d Cir.1967). This same requirement applies to a section 12(2) claim. *See Klein v. Computer Devices, Inc.,* 591 F.Supp. 270, 277–78 (S.D.N.Y.1984) (Goettel, J.). Shareholders who purchased their shares after July 25, 1983, had access to

additional information which may have affected their knowledge of the alleged omission. Those who purchased after July 28, 1983, certainly had access to substantial additional information. Their knowledge of the allegedly omitted information is a central issue to the inquiry in a section 11 or 12(2) claim. This issue, however, does not exist for those shareholders who purchased before July 25, 1983, and thus did not have access to the same or any other information.[11]

Under *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), typicality under Rule 23(a) is satisfied only if the named plaintiff and the proposed class members suffered the same injury under similar circumstances. In *Falcon,* the named plaintiff sought to represent a class on a broad claim of employment discrimination. The named plaintiff's individual claim alleged discrimination in promotion, whereas the class claim alleged discrimination in hiring practices. *Id.* at 149–52, 102 S.Ct. at 2366–68. The Supreme Court ruled that a named plaintiff, who failed to establish a practice of discrimination in hiring, could not be typical of a class alleging this particular injury. *Id.* at 152–53, 102 S.Ct. at 2367–68. Similarly, a section 11 and 12(2) claim, which is based upon a lack of information, could not be typical of such a claim made by persons who possessed additional information. We, therefore, find that the named plaintiffs' section 11 and 12(2) claims are not typical of the proposed extended class.

**2.  Extending the Class on the Rule 10–b Claim.**

The defendants also assert that the Rule 10b–5 claims of Klein, Massey, and Davella

---

**11.** This Court is sensitive to the fact that Fed.R. Civ.P. 23 does not grant a court authority to inquire into the merits of a suit in order to determine whether it may be maintained as a class action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Dura-Bilt Corp. v. Chase Manhattan Corp., supra,* 89 F.R.D. at 94. Accordingly, we make no determination as to whether members of the proposed extended claim had any knowledge of the newspaper accounts correcting the alleged defects, or whether such knowledge would cure the alleged defects in the registration documents. Nor do we determine by this motion that such persons do not have valid claims under sections 11 and 12(2). However, to the extent that such persons were aware of the news releases and nonetheless claim that they were defrauded, their claims may conflict with those of the original claim which maintains that the alleged omissions in the prospectus were all material.

are not typical of the extended class. The plaintiffs claim that the allegedly defective prospectus artificially inflated the price of CDI stock and thereby caused a fraud on the market. From July 8, 1983, through July 25, 1983, the market was reacting to the information in the prospectus. *See Fisher v. Plessy Co., Ltd.,* [1984] Fed.Sec. L.Rep. (CCH ¶ 91,687 at 99,475, 103 F.R.D. 150 (S.D.N.Y.1984). Following the July 25, 1983, and July 28, 1983, press releases, the market was reacting to the additional information garnered from CDI's piece-meal disclosures over a three week period. The materiality of the alleged omissions in the prospectus, and its attendant effect upon the market, necessarily varied during this period.[12] Although the price of CDI may have remained artificially inflated during this later period, the causes of that inflation differed from the inflation which existed prior to any disclosures by CDI. Under *General Telephone Co. of the Southwest v. Falcon, supra,* 457 U.S. 147, 102 S.Ct. 2364, we find that the named plaintiffs' Rule 10b–5 claims are not typical of the proposed extended class. As the plaintiffs have failed to satisfy Fed.R.Civ.P. 23(a) with respect to the extended class, we deny certification of that part of the proposed class on all class claims.

3. Extending the Class to July 28, 1983.

We approve extending the class through July 28, 1983, rather than merely through July 25, 1983, as conceded by the defendants. We recognize that many investors, as well as the market itself, required time to assimilate the additional information contained in the first press release. The three-day extension reflects this time. The extension also embraces the press release of July 28, 1983, by which time a significant amount of additional information was available to prospective CDI investors.

F. Satisfying Rule 23(b).

■ The defendants do not raise the issue of whether the plaintiffs have satisfied

Rule 23(b). Nevertheless, this Court must find that the plaintiffs have satisfied one of the conditions under Rule 23(b), in addition to meeting the requirements under 23(a). We find issues of fact common to all members of the uncontested class on the sections 11 and 12(2) claims, and the section 10(b) and Rule 10b–5 claims. *See Korn v. Franchard, Inc., supra,* 456 F.2d at 1212; *Dura-Bilt Corp. v. Chase Manhattan Corp., supra,* 89 F.R.D. at 93. We also find that the proposed class action is the most efficient means of litigating this suit as the proposed class consists of numerous investors, many of whom would in all likelihood have individual claims too small to warrant an individual suit. *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 399, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980); *see Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

III. CONCLUSION

■ Under all these circumstances, we certify a class, for purposes of pursuing the claims under section 10(b) of the Securities Exchange Act of 1934, of persons who purchased CDI stock on or after July 8, 1983 and on or before July 28, 1983. We also certify a sub-class, for purposes of pursuing the claims under sections 11 and 12(2) of the Securities Act of 1933, of all persons who purchased shares of CDI common stock during the same period and who can trace their shares to the public offering on or about July 8, 1983. We also approve the named plaintiffs and their counsel as representatives of the above certified class and sub-class.

SO ORDERED.

---

12. We do not determine that persons who obtained their CDI shares after July 25, 1983, do not have a Rule 10b–5 claim for an artificially inflated market price. Nor do we determine

that any subsequent disclosures by CDI either cured the allegedly defective prospectus, or terminated the attendant fraud on the market. *See supra* note 11.